At this term of the Court, Alfred Boice, negro, was indicted and tried for the murder of John Mawheney, of the first degree, near Middletown, on the 9th day of August preceding. The dead body of the deceased, who was an aged, feeble and delicate man, was found lying on the road between Middletown and Armstrong's Corner, with the bridge of his nose broken and crushed in by one or more violent blows, apparently. A pocket-book was found on the *Page 356 
ground near it, which it was proved had been purchased by the prisoner that afternoon in Middletown. It was also proved by another witness that he was on that part of the road that night when the prisoner came up the road and said to him that there was a peach-pluck behind them, let's go through him; he asked him how he knew, and he said he had just seen him. In a little while he came along, when the prisoner went up to him and said, "Where is that five cents you owe me?" to which he replied that he had before told him he had no money. The prisoner then struck him and knocked him down; he then raised partly up on one of his arms and said, "Oh! see my face!" and then told him if he would let him up he would let him have what money he had, to which the prisoner replied, "You told me a lie then, did you, when you said you had no money?" and struck him again, and knocked him flat on his back, and then left him lying there. He struck him both times with his fist. This testimony was corroborated by several other witnesses for the State, one of whom met the deceased, whom he knew, and two negro men whom he did not recognize, about nine o'clock that night, on the road as he was walking into Middletown, the two negroes walking close beside each other, and the deceased just behind them, walking in the same direction; and he was the first person on his return, in about an hour afterwards, to find his dead body lying flat on its back in the road not far from the place where he had met them. And another, that he passed the deceased and two or three other persons with him, walking up the road that night as he was going from Middletown to Armstrong's Corner. They were walking quite slow when he passed them, but just before he reached Armstrong's Corner, he saw and recognized the prisoner and the first witness examined as they passed him together walking fast, and went on up to the corner ahead of him into a crowd of colored people then collected there. And another, that he heard the prisoner say to some persons standing there as he came up into *Page 357 
the crowd, "not to fool with him, for he had just knocked a man stiff down the road!" And another, that he saw the prisoner in the store that night stretch out his hand, and at the same time say to some men standing around, "Do you see that?" and then add that he had just knocked some d___d old son-of-bitch cold down the road! and that his knuckles were then skinned, and there was blood on his fingers. And another, that he heard the prisoner say there that night, that he had killed one man down the road, and if they did not look out he would kill another. The deceased was a very quiet and inoffensive person, and a gardner in the service of a gentleman residing in the neighborhood.
The physicians who performed the post mortem examination of the body at the coroner's inquest, testified that it was a contused wound, which might have been made with a blunt instrument, or with a fist. The bones of the nose were broken, and it was such a blow, or blows, as by concussion of the brain might have produced death, and, in their opinion, that was the cause of his death.
The prisoner at the bar is indicted and on trial for the highest crime known to the law of this State. He is charged with the *Page 358 
commission of the crime of murder in the first degree, the crime being alleged by the State to have been committed by taking the life of John Mawheney, on the 19th of August last.
Murder is where a person of sound mind and discretion unlawfully kills a reasonable creature, with malice aforethought, either express or implied. At common law such killing was murder without any distinction of degrees, but our statute has divided the crime into two degrees, the first and second, and the killing of a human being unlawfully and withexpress malice, is murder of the first degree, and where there is no express malice aforethought, and the fact of killing is done under such circumstances as to make it a case of implied or constructive malice, the crime is murder of the second degree. The division of the crime of murder by our statute into the first and second degree, merely changes the punishment and modifies it, leaving the crime in the first degree punishable with death, and making it in the second degree punishable by fine, whipping, pillory, and imprisonment for life.
Every homicide is held to be malicious and premeditated, and therefore amounting to murder, unless it otherwise appears by some facts or circumstances of excuse, justification or alleviation, and this may be shown either by evidence disclosed on the part of the prosecution, or by the defense. In order to distinguish between the two grades of the crime of murder, a proper application of the law of express and implied malice is necessary, for if the homicide is committed with express malice, the crime will be murder of the first degree, but if committed with implied malice, it will be reduced to the lower grade of murder, that is, murder of the second degree. Express malice is where one person kills another with a sedate, deliberate mind and formed design; and such design may be shown by the circumstances attending the act, such as the deliberate selection of a dangerous or deadly weapon, knowing it to be such, antecedent threats *Page 359 
or menaces, and privily lying in wait, former grudges and preconcerted schemes to do the party slain some great bodily harm, or the like. Implied or constructive malice is an inference or conclusion of law from the facts found by the jury; and among these facts, the actual intention of the prisoner at the time of the commission of the fatal act, becomes an important and essential fact to be ascertained by the jury, for though he may not have intended to take away life, or to do any great personal harm, yet he may have been engaged in the perpetration of some other felonious or unlawful act, such for instance as intending to rob the party slain, from which the law raises the presumption of malice.
The matters to which you should first direct your inquiries in this case are, whether John Mawheney, the party alleged to have been murdered on the 19th of August last, is dead, and whether he came to his death by acts of violence inflicted upon him by the prisoner at the bar. I presume you will have but little difficulty in determining these facts. If you shall be satisfied from the evidence before you that John Mawheney is dead, and that he came to his death by acts of violence by the hands of the prisoner at the bar, you will then determine the character of the offense, whether it is murder of the first or second degree. I say whether it is murder of the the first degree, or murder of the second degree, because I feel constrained from a sense of duty to say to you, that there is not the slightest evidence before you of any sort of provocation, and therefore the offense cannot be reduced below the crime of murder of the second degree, and the important inquiry is, whether it is of the first or second degree. This fact, it is your duty to determine from the evidence and all the surrounding circumstances.
If the homicide was committed, and John Mawheney was killed by the prisoner with express malice aforethought, such as I have described it to you to be, he is guilty of murder of the first degree. But if there was no express malice by which the prisoner was moved and actuated in *Page 360 
the commission of the offense, and it was done under such circumstances as come within the principle of implied malice such as I have described that to you to be, then the crime would be murder of the second degree. And here, as I have before said to you, it is essentially necessary to the determination of the question of express or implied malice, to ascertain and satisfy yourselves as to the intention of the prisoner at the time of inflicting the violence, whether he did or did not intend to take away the life of the deceased. If he did intend to kill him, he is guilty of murder of the first degree; but if he did not intend to deprive him of life, and was engaged in any other felonious and unlawful act, such as an attempt to rob him, or the like, he is guilty of murder of the second degree. I believe I have said all that is necessary that I should say to you in reference to the law applicable to the case, leaving the facts, without comment, entirely for your determination, it is neither our province or desire to discuss them. You will now take the case and give it that deliberation and consideration which its importance to the prisoner as well as the State demands, and render such verdict as your sense of duty under the responsibility which has devolved upon you may require. Giving to the prisoner the benefit of any reasonable doubt that you may entertain growing out of all the facts and circumstances of the case. Such doubt, however, should be such only as men of thought and discretion, as you doubtless are, would reasonably entertain, and as are irreconcilable with the evidence on which you are sworn to give your verdict.
 Verdict — "Guilty of murder of the second degree." *Page 361